IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
KESTREL HOLDINGS I, L.L.C.,      )
                                  )
     PLAINTIFF,                   )
                                  )
VS.                               )   1:04-MC-10068-NG
                                  )
LEARJET INC. and BOMBARDIER, INC.,)
                                  )
     DEFENDANTS.                  )
                                  )
```

RECEIVED
Clerk's Office
USDC, Mass.
Date 4-2-04
By _____
Deputy Clerk

## THOMAS EAGAR'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY

### PLAINTIFF'S MOTION SHOULD BE DENIED OR LIMITED BECAUSE IT IS OVERLY BROAD, UNDULY BURDENSOME AND INVADES MR. EAGAR'S RIGHT TO PRIVACY WITH REGARD TO HIS PERSONAL FINANCIAL RECORDS.

COMES NOW RESPONDENT, TOM EAGER, through counsel, urging this Court to deny Plaintiff's Motion to Compel Discovery relating to the Fed. R. Civ. P. 45 subpoena duces tecum served upon Thomas W. Eagar.

A. Introduction

1.  The United States Supreme Court provides the light by which this issue must be examined:

> "Of all the rights of the citizen, few are of greater importance or more essential to his peace and happiness than the right of personal security, and that involves, not merely protection of his person from assault, *but exemption of his private affairs, books and papers from the inspection and scrutiny of others.* Without the enjoyment of this right, all other would lose half their value." *Interstate Commerce Comm'n v. Brimson*, 154 U.S. 447, 449 (1894). (emphasis added)

2. Thomas Eagar is a professor at M.I.T. and a resident of Massachusetts. He is also a world renowned metallurgist who consults with private and government entities assisting them with both commercial and litigation problems. He has been designated as an expert witness by Learjet Inc. and Bombardier Inc., the Defendants in a commercial litigation pending in the U.S. District Court for the State of Kansas filed by Kestrel Holdings I, LLC. (Hereafter, that case will be referred to as the "Kansas Case".) The action pending before this Court involves the Plaintiff's demand that Mr. Eagar produce for review and copying private financial information which is wholly unrelated to any aspect of the Kansas Case.

3. Defendants timely filed their Rule 26(a)(2) disclosures and Mr. Eagar's report in the Kansas Case on January 27, 2004. Upon request by Plaintiff, Defendants provided supplemental materials relating to the Rule 26 disclosures on February 4, 2004. See Eagar Exhibit 1, attached hereto. Additional copies and/or descriptions of all documents provided to Mr. Eagar for review were also provided to Plaintiff per its request on February 6, 2004. See Eagar Exhibit 2, attached hereto. The deadline to complete discovery in the Kansas Case was March 12, 2004 and Defendants had obtained Mr. Eagar's agreement to present himself for deposition in Boston on February 19, 2004. Rather than agree to take his deposition on that date, and knowing that Defendants' counsel was leaving the country on business from February 27th through March 11th, Plaintiff served Mr. Eagar with a Rule 45 Subpoena on February 11, 2004 and thereafter notified Defendants that Plaintiff would not take the deposition of Mr. Eagar on February 19th as previously agreed. It should be noted that the subpoena, attached hereto as Eagar Exhibit 3, purported to require the production of certain documents and records in Boston on February 24th five days after the previously arranged date for the deposition. Plaintiff did not serve Defendants with a copy of the subpoena as required by Rule 45(c)(2)(B) and Defendants learned of the subpoena only when Mr. Eagar contacted their counsel about it.

4.     Upon learning that Plaintiff had served discovery directly on its experts[1], counsel for the Defendants immediately determined that the requests made by the subpoena served on Mr. Eagar were overly broad, unduly burdensome, sought irrelevant information and were oppressive. They immediately attempted to negotiate a reasonable compromise with counsel for the Plaintiff but Plaintiff's counsel refused to even engage in such negotiations. A copy of the correspondence setting forth Defendants' offer is attached hereto as Eagar Exhibit 4. The Affidavit of Thomas W. Eagar, attached hereto as Eagar Exhibit 5, further explains the facts and circumstances of this matter and Mr. Eagar's willingness to cooperate in reasonable discovery. Plaintiff has steadfastly refused to compromise its demands.

5.     On February 23, 2004, Mr. Eagar timely filed his objections to the subpoena duces tecum, per Fed. R. Civ. P. 45 (c)(2)(B). Plaintiff filed the Motion to Compel Discovery on March 3, 2004 and served its Motion solely on the defendants in the Kansas Case. However, Mr. Eagar was not initially served with the Motion to Compel, as required by Fed. R. Civ. P. 45 (b)(1). Mr. Eagar was finally served and made a party to this action on March 19, 2004, but only after Defendants' Response to the Motion to Compel was filed pointing out Plaintiff's dereliction. This response is, therefore, timely filed.

### B. Argument and Authorities

6.     Respondent would first like to dispose of Plaintiff's request for contempt findings. Mr. Eagar agreed to assist Defendants as an expert witness in the Kansas case and, thereby, agreed to participate in the discovery process as required by the Federal Rules of Civil Procedure. He never agreed to open up his personal financial records for all the world to see. When served with the Rule 45 Subpoena, which was both Mr. Eagar's and Defendants' first notice that Plaintiff was demanding to see such extensive financial documents, Mr. Eagar agreed to a limited disclosure of his personal information and asked Defendants' counsel to negotiate with Plaintiff toward that end. Defendants' counsel traveled from Texas to Boston on February 19th to meet

---

[1]     Plaintiff served similar Rule 45 subpoenas on two other Defense Experts, one in Oklahoma and one in Illinois, backing out of agreed deposition dates for their depositions as well.

with Mr. Eagar, discuss the subpoena, review his record systems, determine the scope of the task presented if it were determined that the requested records had to be located, organized, copied and produced, and assist him in locating local counsel in case negotiations proved unsuccessful.

7. Mr. Eagar then responded to the subpoena by properly and timely submitting his objections to Plaintiff on February 23, 2004. Mr. Eagar also attempted to file his objections with this Court. However, the Clerk of this Court returned all copies of the Objection, file stamped, stating they could not be filed as a case was not pending. A copy of the Objection to Subpoena is attached as Eagar Exhibit 6. In short, Respondent believes that he has followed the Rules of Civil Procedure to the letter. He submits that his objections to Plaintiff's demands are valid and well justified. There is no order pending from any Court upon which a finding of contempt could be based. Indeed, there is no basis whatsoever for Plaintiff's request for a finding of contempt.

8. Similarly, there is no basis for Plaintiff's request for reimbursement of expenses. In fact, Respondent is entitled to recover his costs, including reasonable attorneys fees incurred in responding to Plaintiff's discovery request pursuant to Rule 45 (c)(1):

> **"(c) Protection of Persons Subject to Subpoenas.**
>
> (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorneys fee." F.R.C.P. 45(c)(1).

Plaintiff has made unreasonable demands for Respondent's private financial records and overly burdensome requests for other information. Its counsel has falsely certified to this Court that Plaintiff conferred or attempted to confer with Respondent in an effort to secure the documents requested without court action and has refused to negotiate a reasonable

compromise[2]. With no steps to protect Respondent from undue burden, Plaintiff brought this action and joined Mr. Eagar, thereby necessitating Respondent to retain counsel to defend him. At no time has Plaintiff taken steps to avoid imposing undue burden or expense on Respondent, indeed it seems Plaintiff has instead gone out of its way to make this discovery as expensive and burdensome as possible upon Mr. Eagar[3].

9. <u>Plaintiff's requests are overly broad.</u> The requests in the instant subpoena are overly broad both on their face and as a result of the Instructions and Definitions imposed on them by Plaintiff. For example, Plaintiff defines the terms "Bombardier" and "Learjet" to include not only the each of the Defendants but also:

> "...its predecessors in interest, affiliates, parents, subsidiaries, related entities, and all of the past and present shareholders, officers, directors, employees, agents, servants, representatives, [sic] including each past and present attorney."

Plaintiff then uses the terms Learjet and Bombardier in Requests Nos. 10 and 11 seeking "[a]ll records related to invoicing or billing for services provided to" those entities for the years 2000, 2001, 2002 and 2003. It is impossible for Respondent to even identify all of the persons described in Plaintiff's definition, much less search his records invoice by invoice to determine if, for example, he has ever worked for a past employee or attorney of Learjet.

10. The same is true regarding Plaintiff's definition of the terms "you", "your" or "Thomas Eagar". Plaintiff purports to incorporate into each of those terms "Thomas W. Eagar and anyone acting on his behalf including, but not limited to, attorneys, agents, staff or employees." Plaintiff does not, however, identify, for instance, what attorneys it is referring to or what "acting on his behalf" includes. If Plaintiff intends for the terms "attorneys...acting on

---

[2] In fact, the first mention of financial documents other than bills and time records for the Kansas Case was in the Rule 45 Subpoena. Plaintiff's only "attempts to confer" after the subpoena was served was its refusal to negotiate any compromise whatsoever.

[3] For example, in addition to asking Mr. Eagar to go back through his personal financial records for the past four calendar years, Plaintiff has insisted that Respondent separate the information by type of document and calendar year instructing the witness, contrary to the Federal Rules of Civil Procedure, that, "These documents must be separated for each of these calendar years."

5

[Mr. Eagar's] behalf" to include Defendants' counsel, then the incorporation of the definition provided by Plaintiff would require production of Defense counsel's entire file! Requests No. 1, 2, 3, 4, 5, 6 and 7 are rendered overly broad and unduly burdensome as a result of Plaintiff's definition of "you" and "your".

11.   The definition of "document" is also overly broad and so all inclusive as to render use of the term meaningless. Plaintiff purports to include over a hundred different things ranging from simple correspondence to "any other device or instrument from which information can be perceived or which is used to memorialize human thought, speech or action, in your possession, custody or control wherever located." Plaintiff further attempts to define "document" by reference to "any document described and/or produced pursuant to these interrogatories and requests for document production." Of course, there are no interrogatories or requests for production pertinent to the subpoena served on Mr. Eagar, so Plaintiff's reference is nonsensical.

12.   <u>Request No. 1.</u> Plaintiff's Request No. 1 is overly broad and rendered more so by Plaintiff's definitions of "documents" and "you". It reads as follows:

> "All documents and things created by you that relate to this litigation, including but not limited to notes, reports, correspondence, and drafts of any of the foregoing documents."

As noted above, before the subpoena was ever issued, Defendants had provided Plaintiff with all of the information and material required to be produced under Rule 26(a)(2) for expert witnesses, including a detailed report of Mr. Eagar's opinions and conclusions. He has no drafts of "notes, reports, [or] correspondence", even if such drafts were discoverable. (Respondent respectfully submits that drafts of such things would not be discoverable because they are neither relevant to any issue in the case, are not required to be disclosed under Rule 26(a) and are not reasonably calculated to lead to admissible evidence.) Simply put, Defendants had already provided all documents required under any reasonable interpretation of Request No. 1 before

Plaintiff filed its Motion to Compel. To require the witness to compile and produce yet another copy of those documents is unduly burdensome and constitutes simple harassment.

13.  Request No. 2.  This Request is likewise overly broad and made even more so by the Plaintiff's definitions of "documents" and "you". Request No. 2 reads:

> "All documents and things provided to or otherwise made available to you by Defendants or any of their representatives, including but not limited to Defendants' counsel or staff for Defendants' counsel."

Defendants provided copies and/or identified in detail each of the documents provided to Respondent for review in connection with this case in their Rule 26(a)(2)(B) disclosure well in advance of the service of the subject subpoena. If Plaintiff wants additional "documents and things" it has not made the request clear enough for Respondent to identify them. Does Plaintiff want all of the things that Mr. Eagar reviewed and relied upon in forming his opinions (which is what is discoverable), or does he want things that were "available to" Respondent whether he reviewed them or not? For example, Mr. Eagar met with Defendants' counsel and certain Learjet employees on several occasions to discuss issues in this case. Are such witnesses to be included in the category "things...otherwise made available to you"? During those visits, Mr. Eagar had access to the entire Learjet factory, including the manufacturing floor where Learjet 60 aircraft were being assembled. Is the manufacturing assembly line a "thing" made available to Mr. Eagar? Here again, Defendants provided all of the materials that could reasonably be included in Request No. 2 in advance of Plaintiff's filing of the subpoena in question. Attempting to require the witness to do so again is over burdensome.

14.  Request No. 3.  Plaintiff's Request No. 3, at first blush, appears to again ask for the materials previously provided to Plaintiff by Defendants, although the request is broadened and confused by Plaintiff's definitions of "documents" and "you" as well as its reference in the Request to "other documents created by you regarding this litigation." The Request reads:

7

"All documents or tangible things reviewed in forming any opinion you hold regarding this litigation including any published materials, reports, work papers, memoranda, charts, graphs, or other documents created by you regarding this litigation."

Plaintiff was already in possession of all of the documents reviewed by Mr. Eagar in forming his opinions in the Kansas Case. It appears that Plaintiff may be seeking only documents and things created by Mr. Eagar as part of his work on the Kansas Case. Even if that is so, all of those items were produced to Plaintiff by Defendants in the Rule 26(a)(2) disclosure.

15.  Request No. 4.  Plaintiff's Request No. 4 is overly broad and again rendered nonsensical by Plaintiff's definitions of "documents" and "you". The Request reads:

> "Any documents or tangible things evidencing correspondence between you and any other person in any form (i.e., e-mails, letters, voice mail, etc.) regarding this litigation, including but not limited to correspondence with Defendants or any of their representatives (including but not limited to Defendants' counsel or staff for Defendants' counsel)."

When one inserts the purported definition of "you" into the request, it reads:

> "Any documents or tangible things evidencing correspondence between *Thomas W. Eagar and anyone acting on his behalf including, but not limited to, attorneys, agents, staff or employees* and any other person in any form (i.e., e-mails, letters, voice mail, etc.) regarding this litigation, including but not limited to correspondence with Defendants or any of their representatives (including but not limited to Defendants' counsel or staff for Defendants' counsel)."

Such a request essentially seeks all correspondence between the Defendants' counsel and Plaintiff's counsel regarding Mr. Eagar, his deposition, his reports, etc. It would include correspondence with court reporters, hotels, travel agencies, and even other Defense counsel! Even if one reads the Request to only seek communications originating from Respondent and his staff, it is still too broad and seeks information not relevant or reasonably calculated to lead to admissible evidence. For example, e-mails notifying Defendant's counsel that the Respondent was served with a copy of Plaintiff's Motion to Compel would have been covered by the breadth of Plaintiff's request (had they existed at the time of the subpoena) but would not be

8

discoverable. Asking Respondent to go back and review his e-mails "and voicemails, etc." to determine if there is any relevance to this litigation in any of them, without respect to time or subject matter, is unduly burdensome.

16.  Request No. 5.  Respondent recognizes the legal relevance of some of the information requested by Plaintiff in Request No. 5.  Indeed, Respondent offered, through Defendant's counsel, to voluntarily provide Plaintiff with his time records and bills for work on this case if Plaintiff would withdraw the subpoena and negotiate a reasonable resolution of this discovery issue.  Plaintiff refused.  Rule 26(a)(2) required Defendants to indicate the compensation to be paid to the witness, which they did prior to any subpoena. The other requests made by Plaintiff in Request No. 5 are too broad.  The Request reads as follows:

> "All retainer agreements, billing statements, time records, or other documents generated by you or provided to you regarding your services in this litigation, and drafts of any of the forgoing documents."

There is no written "retainer agreement" between Mr. Eagar and Defendants in the Kansas Case. The identity of "other documents generated by you or provided to you regarding your services in this litigation" is unknown (and given Plaintiff's definition of "documents", unknowable.) Respondent has already provided copies/complete identifications of all materials provided to him so that he could perform the review he was hired to do. He has already provided a copy of his detailed report generated from his services in this case. Asking for the same materials time and time again is overly burdensome and constitutes harassment.

17.  Requests 6 through 11.  Plaintiff's Requests 6-11 are the most egregious of the Requests contained in the subpoena duces tecum. They seek a wide variety of private financial records and papers of Mr. Eagar and are totally irrelevant to any issue in the Kansas Case. Furthermore, they are extremely invasive and burdensome. They read as follows:

9

6. Documents sufficient to demonstrate all gross income you have realized from being an expert consultant or expert witness for calendar years 2000, 2001, 2002 and 2003. These documents must be separated for each of these calendar years.

7. All of your invoices or bills for expert consultation and expert testimony for calendar years 2000, 2001, 2002 and 2003. These documents must be separated for each of these calendar years.

8. All records related to invoicing or billing for services provided to Shook, Hardy & Bacon or Shook Hardy & Bacon clients for calendar years 2000, 2001, 2002 and 2003. These documents must be separated for each of these calendar years.

9. All records related to invoicing or billing for services provided to Gendry & Sprague or Gendry & Sprague clients for calendar years 2000, 2001, 200, and 2003. These documents must be separated for each of these calendar years.

10. All records related to invoicing or billing for services provided to Learjet (including all entities within the definition of Learjet above) for calendar years 2000, 2001, 2002 and 2003. These documents must be separated for each of these calendar years.

11. All records related to invoicing or billing for services provided to Bombardier (including all entities within the definition of Bombardier above) for calendar years 2000, 2001, 2002 and 2003. These documents must be separated for each of these calendar years."

As can be readily seen, a common thread runs through these requests. They are all extremely broad. Request No. 6 seeks "Documents sufficient to demonstrate all gross income" from Mr. Eagar's consulting work. The other requests seek "all records" or "all invoices or bills" for a four year period in a variety of categories. On their face, Requests 6 and 7 seek information on all of Respondent's outside income, regardless of the amount, source, client, case, subject matter or circumstance of employment. They apply to Mr. Eagar's consulting work for government entities, his work for industry (much of which involves confidential processes and trade secrets), and his work for litigation clients, both plaintiffs and defendants. They would involve cases that are currently open and those that have been long closed. Just compiling the information would be a monumental task.

18.  As mentioned earlier, as a direct consequence of Plaintiff's definitions, it is virtually impossible for Mr. Eagar to identify responsive documents to Requests 10 and 11. Inserting the purported definitions into Requests 10 and 11, they read:

10.  All records related to invoicing or billing for services provided to Learjet, *its predecessors in interest, affiliates, parents, subsidiaries, related entities, and all of the past and present shareholders, officers, directors, employees, agents, servants, representatives, [sic] including each past and present attorney* (including all entities within the definition of Learjet above) for calendar years 2000, 2001, 2002 and 2003. These documents must be separated for each of these calendar years.

11.  All records related to invoicing or billing for services provided to Bombardier, *its predecessors in interest, affiliates, parents, subsidiaries, related entities, and all of the past and present shareholders, officers, directors, employees, agents, servants, representatives, [sic] including each past and present attorney* (including all entities within the definition of Bombardier above) for calendar years 2000, 2001, 2002 and 2003. These documents must be separated for each of these calendar years."

How is Mr. Eagar supposed to identify which of his records pertain to cases where one of Learjet's or Bombardier's predecessors in interest, affiliates, parents, subsidiaries, or related entities were involved? How is he even expected to identify what those entities are? Similarly, but perhaps even more difficult, how is Mr. Eagar supposed to identify all of the past and present shareholders, officers, directors, employees, agents, servants, representatives, [sic] including each past and present attorney of Learjet and Bombardier, much less determine if any of those people were involved in any of his other consulting assignments? It is impossible to do so.

19.  The same problem exists with regard to Requests 8 and 9, but not directly as a result of the proposed definitions. Instead, Plaintiff includes in the Requests themselves a requirement that Respondent identify all of the prior clients the specified law firms in order to respond to the Requests. It must be noted here that Plaintiff chose to file this discovery request upon Mr. Eagar under Rule 45 instead of seeking such information from Defendants through

interrogatories or requests for production. The Requests to Mr. Eagar are overly broad and unduly burdensome.

20. <u>Discovery of Financial Information from Expert Witnesses.</u> Respondent is an experienced expert witness, having often consulted in litigation filed in Federal Court and having testified on numerous occasions. He recognizes that the income he derives from working on a given case, for a given party or perhaps even for a given attorney can hold some relevance as to the credibility of his opinions and conclusions. Mr. Eagar offered, through Defendants' counsel, to voluntarily supply such relevant information, provided only that Plaintiff spare him the burden of litigating the subpoena at bar. Plaintiff refused to even discuss clarification or limitation of its requests. Respondent offered to provide a list of other cases he has worked on for Learjet, Bombardier, Shook Hardy and/or Gendry & Sprague, P.C. in the last four years along with a total fees billed number on each of those cases. He also offered to provide his time records and bills for this case, i.e. documentation revealing the total financial interest he has in this litigation. That offer was rejected.

21. Respondent has been unable to find any case wherein an expert witness was required to turn over this type of sweeping financial information. However, cases do exist wherein the courts have recognized the private nature of financial records and information and restricted discovery to relevant matters or facts reasonably calculated to lead to admissible evidence. One such recent case is *In re Boston Herald, Inc. v. Connolly*, 321 F.3rd 174 (1st Cir. 2003). In *Connolly*, the court recognized the importance of financial privacy:

> "Personal financial information, such as one's income or bank account balance, is universally presumed to be private, not public.....Recognition of the importance of financial privacy is also enshrined in public policy." *Id. at 190.*

Coupled with the fundamental right to financial privacy, is Respondent's right to be free from oppressive discovery. In this case, Mr. Eagar's role as an expert witness puts him somewhere in between a neutral third party, stranger to the litigation and a party litigant. Rule

26 of the Federal Rules of Civil Procedure specifically addresses what information is discoverable from such an expert witness.

22. Mr. Eagar is a retained expert for purposes of the Rules. As such, Defendants were required to, and did, provide the information about Mr. Eagar required by Rule 26(a)(2). However, nothing in Rule 26(a)(2) requires the disclosure of the extensive financial information pertaining to consulting work on other cases and other projects. The closest Plaintiffs can come to finding authority for their position in Rule 26(a) is the requirement to provide information about "the compensation to be paid for the study and testimony" on the specific case for which the expert has been retained. F.R.C.P. 26(a)(2)(B). Such information was provided to Plaintiffs prior to the service of its subpoena directed to Mr. Eagar. Plaintiff makes no complaint that the information required under Rule 26(a)(2)(B) was not provided before it filed its Rule 45 subpoena duces tecum. Instead, it claims it is entitled to a vast array of additional facts from the witness, purportedly in order to prepare for trial in the Kansas Case. For those purposes, the general discovery rules restricting such broad ranging discovery kick in.

23. Rule 26(b) sets forth the general scope and limits of discovery. Whether Plaintiff chooses to conduct its discovery via depositions, interrogatories, requests for production or, as here, through third-party Rule 45 subpoenas, it must comply with those limitations. In other words, Plaintiff is limited to discovering only matters that are relevant or reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's unbridled requests for financial information from Mr. Eagar fail that test.

24. Plaintiff has the burden to demonstrate that the materials it seeks are discoverable. "While the Federal Rules of Civil Procedure unquestionably allow broad discovery, a right to discovery is not unlimited." *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). The First Circuit, like every other circuit, recognizes this principle.

> "Discovery may not be had regarding a matter which is not 'relevant to the subject matter involved in the pending action' [citing Rule 26(b)(1)] **Even if relevant,** discovery is not permitted where no need is shown or compliance would

be unduly burdensome, or where harm to a person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1324 (1st Cir. 1990)(emphasis added)

Courts throughout the nation have repeatedly admonished litigants that discovery permitted by the Federal Rules of Civil Procedure does not amount to a license to conduct a "fishing expedition", yet Plaintiff seems intent on setting as many drag lines as he can before the ranger chases him off the lake. Plaintiff makes no attempt to show why the extensive financial information it seeks is relevant to the subject matter of the Kansas Case. Indeed, it suggests that Respondent bears the burden of showing why the discovery should not be allowed.[4] Respondent respectfully submits that income he derives from unrelated consulting work has no relevance to the subject matter in the Kansas Case and that any limited need which Plaintiff may have for this information is vastly outweighed by the burden and harm to Respondent.

25.  The only case law discussing the discovery of financial information from an expert witness cited by Plaintiff in its Memorandum in Support of Motion to Compel Discovery were the two cases mentioned in Respondent's objections to the subpoena duces tecum. Neither of those cases support Plaintiff's suggestion that such global financial discovery of an expert is appropriate.

26.  In *Amster v. River Capital International Group, LLC,* 2002 WL 2031614 (S.D.N.Y.), the Court considered discovery requests aimed at obtaining all of an expert's invoices in connection with a specific litigation, or alternatively, a statement by plaintiff as to the total amount paid for the experts work on that matter. The court recognized that Rule 26(a)(2) calls for disclosure of what an expert is to be paid for his work on the case at bar. It thereafter crafted a reasonable order allowing discovery of the total amount of compensation to be paid to the expert witness in the case. Interestingly, the Court concluded that the invoices themselves did not need to be produced. *Id. at 2*. The decision in *Trower v. Jones,* 520 N.E. 2d 297 (Ill. Sup.

---

[4] The only burden respondent bears in this case, where the requests are overly broad on their face, is to demonstrate to the Court the over burdensome nature of the requests.

Ct. 1988), is of limited use on this issue as it is a state law decision applying the Illinois rules of evidence. It was cited by respondent in his objection for the simple proposition that information about a witness's income from testifying as an expert should be limited to a reasonable time frame. Nothing in *Trower* even remotely suggests that a litigant should be given free reign to root around in an expert's financial and business dealings on the off chance that he might find something useful for impeachment in some subsequent trial.

27. When all is said and done, these matters are left with the sound discretion of the trial Courts. This case is pending in the U.S. District Court for the District of Kansas. The discovery deadlines for the Kansas case have passed, although Plaintiff has moved for an extension of those deadlines. Given the breadth of Plaintiff's Requests in the instant subpoena duces tecum and the burden on Mr. Eagar to even attempt to comply with those Requests, Respondent respectfully submits that the best course of action for this Court is to sustain Respondent's objections, terminate this collateral action and allow Plaintiff to take up any remaining discovery issues concerning Defendants' experts with the Trial Court in the Kansas Case. If that Court determines that Plaintiff should be allowed additional discovery from Defendants pertaining to their experts, it certainly can order it and, frankly, it is in a far better position to resolve such issues. Plaintiff's Motion to Compel should be denied.

28. Respondent still respectfully asserts that he is entitled to reimbursement for the costs incurred by him in responding to Plaintiff's discovery request. It was, after all, Plaintiff who elected to circumvent Defendants by serving the Rule 45 subpoena duces tecum directly on Respondent rather than seeking the same discovery from Defendants. In doing so, it intentionally increased the cost of this litigation for Defendants, but more importantly, forced Respondent to expend significant time and effort in responding to the subpoena, retaining counsel to deal with the Motion to Compel and assisting in the preparation of this Response. It would be unfair to require Respondent or Defendants to shoulder the burden of those additional expenses when they were caused entirely by the Plaintiff. Respondent therefore respectfully seeks an order from this Court pursuant to Rule 45(c)(1) directing that Kestrel Holdings I, LLC,

Plaintiff herein, and/or Mr. Gary Justis, Lathrop & Gage, L.C., the attorney responsible for the issuance and service of the subpoena, pay to Respondent an appropriate sanction for breach of their duty to take reasonable steps to avoid imposing undue burden and expense on the person subject to the subpoena., including, but not limited to the reasonable attorneys fees necessitated by this action.

### E. Prayer

12. For these reasons, Respondent, Thomas W. Eagar, respectfully asks this Court to deny Plaintiff's Motion to Compel Discovery and order Plaintiff and/or its counsel to pay Respondent for the undue burden and expense caused by the Rule 45 Subpoena, including attorney's fees. For the Court's convenience, a proposed Order is attached to this Response.

Respectfully submitted,

*/s/ Richard L. Edwards*
Richard L. Edwards, BBO 151520
Brian P. Voke, BBO 544327
Campbell Campbell Edwards & Conroy
One Constitution Plaza
Boston, Massachusetts 02129
(617) 241-3000 - telephone
(617) 241-5115 - facsimile

ATTORNEYS FOR THOMAS W. EAGAR, RESPONDENT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Thomas Eagar's Response to Plaintiff's Motion to Compel Discovery was served via U. S. Mail, postage prepaid, on this 2nd day of April, 2004, addressed to the following:

Mr. David A. Bunis
Mr. Nicholas J. Walsh
600 Atlantic Avenue
Boston, Massachusetts 02210-1122

Mr. Gary D. Justis
Lathrop & Gage, L.C.
10851 Mastin Boulevard, Suite 1000
Overland Park, Kansas 66210-1669

Mr. William P. Sampson
Mr. Matthew C. Miller
Shook, Hardy & Bacon, L.L.P.
10801 Mastin Boulevard, Suite 1000
Overland Park, Kansas 66210-1671

_____
Richard L. Edwards

# Exhibit 1