UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS (Chicago)

KESTREL HOLDINGS I, L.L.C.,  )
                             )
          Plaintiff,     )
        v.            )    Docket No. 03-CV-6822
                             )
LEARJET INC., and       )
BOMBARDIER, INC.,        )    Chicago, Illinois
                             )    March 24, 2004
           Defendants.    )

HEARING ON MOTION
BEFORE THE
HONORABLE MAGISTRATE JUDGE EDWARD A. BOBRICK

APPEARANCES:
For Plaintiff:          GARY D. JUSTIS
Kestrel Holdings       LATHROP & GAGE LC
Peter Mason           10851 Mastin Blvd.
Ross Menir            Suite 1000
                     Overland Park, KS  66210-2007

                     PATRICIA A. WRONA
                     188 West Randolph Street
                     Suite 2107
                     Chicago, IL  60601

For Defendant:          RUSSEL BRUCE DUFFIELD
                     LORD, BISSELL & BROOK LLP
                     115 South LaSalle Street
                     Chicago, IL  60603

                     RON A. SPRAGUE
                     GENDRY & SPRAGUE, P.C.
                     645 Lockhill Selma
                     San Antonio, TX  78216-5057

PLEASE PROVIDE CORRECT VOICE IDENTIFICATION

Transcribed by:        Riki Schatell
                     6033 North Sheridan Road, 28-K
                     Chicago, Illinois  60660
                     773/728-7281

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.



1        THE CLERK:  03-C-6822, Kestrel Holdings vs. Learjet,

2   Inc., motion.

3        THE COURT:  Good morning, everybody.

4        CHORUS:  Good morning, your Honor.

5        THE COURT:  Okay, for plaintiff who do we have here

6   this morning?

7        MS. WRONA:  I'm Pat Wrona, W-r-o-n-a, I'm local

8   counsel.

9        THE COURT:  Let me have that again?

10       MS. WRONA:  W-r-o-n-a, on behalf of Kestrel Holding,

11  as local counsel.

12       THE COURT:  Okay.

13       MR. JUSTIS:  Good morning, your Honor, Gary Justis,

14  counsel for Kestrel Holdings I.  J-u-s-t-i-s.

15       MR. DUFFIELD:  Good morning, your Honor, Bruce

16  Duffield with Lord, Bissell & Brook on behalf of defendants

17  Learjet and Bombardier.

18       THE COURT:  Okay, let me have that name again?

19       MR. DUFFIELD:  You bet.  It's Bruce Duffield,

20  D-u-f-f-i-e-l-d.

21       THE COURT:  Okay.

22       MR. DUFFIELD:  I serve as local counsel for the

23  defendants.

24       THE COURT:  Okay.

25       MR. DUFFIELD:  And with me is Ron Sprague, who is

1    lead counsel on this, and whose appearance I filed a few days

2    ago and the pro hac vice petition was also filed.

3              THE COURT:  Well, Mr. Sprague, welcome.

4              MR. SPRAGUE:  Good morning, your Honor.

5              THE COURT:  You come all the way from Texas.

6              MR. SPRAGUE:  I did, your Honor.

7              THE COURT:  Great state of Texas.  Well, I see this

8    interesting motion before me, Plaintiff's Motion to Compel

9    Discovery.  As I understand this motion, it seeks three

10   categories of documents under a subpoena from an expert

11   witness.  Is that where we are?

12             MR. JUSTIS:  That is correct, your Honor.

13             THE COURT:  Okay.  Then go ahead.  Who is going to

14   present this?  And I'm going to give -- Let me ask, Mr.

15   Sprague, Mr. Duffield, you two fellows ready to argue this

16   motion?

17             MR. SPRAGUE:  Yes, your Honor.

18             THE COURT:  Okay.  Did you submit any -- It's not

19   necessary, but did you submit a reply, a response?

20             MR. SPRAGUE:  A response was filed, your Honor, and

21   my pro hac vice motion was filed.  I'm assuming the Court will

22   grant that so I can speak.

23             THE COURT:  All right, well, I haven't seen the

24   response.  Do you have a copy of it?  I'll read it now.

25             MR. SPRAGUE:  I do, your Honor.

1    MR. DUFFIELD:  I do.  I'm surprised --

2    THE COURT:  No, when did you file it?

3    MR. DUFFIELD:  It was filed last Wednesday.

4    THE CLERK:  Probably in the (inaudible).

5    MR. DUFFIELD:  Here's a file-stamped copy.

6    THE COURT:  Okay, thank you, counsel.  Thank you so

7    much.  If you would bear with me a moment, let me go back and

8    read this.  Why don't we all take a small break.  It's not that

9    too long a document.  I'll read this and then we'll be prepared

10   to argue the motion.

11                    (Recess taken.)

12   THE CLERK:  03-C-6822, Kestrel Holdings vs. Learjet.

13   THE COURT:  Okay.  Well, before me is the motion to

14   compel discovery from defense expert Mark Racine.  As I under-

15   stand it, Mr. Racine was served with a subpoena issued from

16   this Court requiring him to produce certain documents, and that

17   Mr. Racine is the designated expert for the defendant.  And

18   I've read the defendants' response, which seemed to present no

19   objection to the materials being requested but to some

20   procedural problems.  And so who is going to speak for -- Mr.

21   Justis?

22   MR. JUSTIS:  That's how we understand it also.  As an

23   initial matter, we just received defendants' response Friday, I

24   think it was faxed to us.

25   THE COURT:  Okay.

1        MR. JUSTIS:  Defendants -- We have not issued a

2  subpoena to defendants nor have we sought this Court to

3  exercise jurisdiction over defendants.  We've issued a subpoena

4  to Mark Racine.

5        THE COURT:  Yes.

6        MR. JUSTIS:  Who is not a party.  Defendants have no

7  standing to object to the subpoena of Mark Racine.  That's

8  pretty clear.  I have --

9        THE COURT:  Why?

10       MR. JUSTIS:  I'll read it right out of Wright &

11 Miller.

12       THE COURT:  Yes.

13       MR. JUSTIS:  "A motion to quash or for protective

14     order should be made by the person from whom the documents

15     or things are requested.  Ordinarily a party has no stand-

16     ing to seek to quash a subpoena issued to someone who is

17     not a party to the action."

18       THE COURT:  That's true, except this is their expert.

19 I think there's a nexus, a significant interest in Mr. Racine

20 for them to appear and object to the subpoena.

21       MR. JUSTIS:  And I do have a case that talks to that

22 specifically again.  I was not able to prepare --

23       THE COURT:  I'm familiar.

24       MR. JUSTIS:  And that's fine.  We are prepared to

25 talk to all their objections.

1      THE COURT:  I'm familiar with that and I subscribe to

2  that view except in those cases where the individual who was

3  objecting has an interest in the particular subject matter of

4  the subpoena, and in this case, this is their designated

5  expert.

6      MR. JUSTIS:  Fine, your Honor, and we are prepared to

7  speak to all the objections they've raised.

8      THE COURT:  Okay.

9      MR. JUSTIS:  The first one, they say that we have not

10  served Mr. Racine with the motion to compel after Mr. Racine

11  filed timely objections to the subpoena duces tecum.

12      THE COURT:  Well, wait.  Let's see.  We have a

13  subpoena, which is an order of this Court upon Mr. Racine to

14  produce the documents.  And that was served on him and so we

15  certainly have -- And he resides in the Northern District of

16  Illinois and the subpoena was issued out of the Northern

17  District of Illinois.  And the records are within the Northern

18  District of Illinois.

19      MR. JUSTIS:  That is all correct.

20      THE COURT:  Well, it seems like we have jurisdiction

21  over this individual.

22      MR. JUSTIS:  What they are arguing is that he was not

23  served with our motion to compel.

24      THE COURT:  Okay.

25      MR. SPRAGUE:  Excuse me, your Honor, does the Court

1    have Mr. Racine's objections which were filed?  They probably

2    weren't filed with --

3              THE COURT:  Yes.  Yes, I've seen them before.

4              MR. SPRAGUE:  Okay.

5              THE COURT:  That we have objections to the subpoenas.

6              MR. SPRAGUE:  I just wanted to make sure that the

7    Court was aware that he timely filed objections to the

8    subpoena.

9              MR. JUSTIS:  Let me speak to that first.

10             THE COURT:  Well, let me tell you something, fellows.

11   I read all that correspondence, that fancy correspondence you

12   fellows issue to one another, and I'm on the same boat with the

13   Magistrate in Kansas City.  Some of this is the silliest stuff

14   I've ever seen when, indeed, we have an expert who is obligated

15   under Rule 26 to provide this information.  And I find it

16   ludicrous where one attorney says I'll give it to you if you

17   don't ask another expert for the same material.  I mean I never

18   heard of any -- It's ludicrous.

19             Go ahead.  He filed some objections.

20             MR. JUSTIS:  He did not file any objections.  They

21   did not file a miscellaneous action.  What they did was they --

22   Mr. Sprague's office prepared those objections and I think

23   attempted to file them with this Court.  No miscellaneous

24   action was ever opened by Mr. Racine.  No motion to quash was

25   ever filed.

1     We received those objections, I believe it was either

2  the day before the day that Mr. Racine was supposed to produce

3  the documents.  We immediately sent a letter to Mr. Sprague

4  saying we really don't understand this curious instrument.  Did

5  you file a miscellaneous action in the Northern District of

6  Illinois?  And also, Mr. Racine, it appears that he has signed

7  this as if he's appearing pro se.  Is that the case?  Or will

8  he have representation?  And those letters are attached to our

9  motion there.  Exhibit N is our letter.

10     The response letter we got was, it stated in part by

11  Mr. Sprague:

12        "Should you choose to open collateral proceedings in

13     other jurisdictions instead of negotiating a sensible

14     resolution of this matter, be advised that my office will

15     represent the respective experts with the assistance of

16     local counsel if necessary."

17     At that point in time he indicated to us that he

18  represents Mr. Racine, so we served the motion to compel upon

19  Mr. Sprague.  Thereafter, I'll let my cocounsel talk about

20  discussions she had with his office.

21        MS. WRONA:  Your Honor, Pat Wrona.

22        THE COURT:  So you served the motion on Mr. Sprague.

23        MS. WRONA:  That's correct, your Honor.

24        THE COURT:  And he indicated he's representing him.

25        MR. JUSTIS:  Correct.

1          MS. WRONA:  And that came out of my office here in

2    Chicago.  After we filed the motion, your Honor may recall here

3    that we first filed it in front of Judge Bucklo to get her to

4    reopen the matter and refer it to you.

5          THE COURT:  Yes.

6          MS. WRONA:  Since you had dealt with us before.

7          THE COURT:  Yes.

8          MS. WRONA:  And right before that motion date was to

9    come along, I was called by Melissa Hines, who is an associate,

10   I believe, of Mr. Sprague's office, and she wanted to fax to

11   us, both Mr. Justis and I, documents from Mr. Racine.  And I

12   said sure, go ahead, so she faxed, I don't know, a dozen or so

13   documents which seemed to be basically his report.  Mr. Justis

14   got it as well.  And with a letter essentially saying, you

15   know, so does that solve everything and we don't have to come

16   to Chicago and see Judge Bucklo?

17         And so we received the documents.  I talked to Mr.

18   Justis and we didn't believe it did resolve the matters for the

19   motion so I indicated -- I had called Bucklo's office, found

20   out we didn't have to appear, and that the matter would be

21   referred to your Honor.

22         The other conversation I had with Mr. Hynes of Mr.

23   Sprague's office was just last week when we got a sense that

24   maybe they were going to have local counsel, and so when I was

25   preparing to re-notice this motion for this morning, I found

1    out from your minute clerk that we needed to do that, I called

2    her up to find out where should this notice go to.  I mean who

3    -- Does it come to you?  And --

4              THE COURT:  This is -- Whom were you speaking with?

5              MS. WRONA:  This is Ms. Hynes of Mr. Sprague's

6    office.

7              THE COURT:  In Texas.

8              MS. WRONA:  Yes, in Texas.

9              THE COURT:  Yes.

10             MS. WRONA:  And she said I don't know who the local

11   counsel is yet.  Mr. Sprague's been dealing with them, but send

12   it to us.  So those have been my conversations, my understand-

13   ing that they represented Mr. Racine for purposes of today's

14   motion.

15             THE COURT:  Anything else?

16             MR. JUSTIS:  That's the -- Do you want to take these

17   one at a time?

18             THE COURT:  Well, let me hear from Mr. Sprague.  Mr.

19   Sprague?

20             MR. SPRAGUE:  Yes, sir.  Your Honor, --

21             THE COURT:  Is that really you here? or are you a

22   vision?

23             MR. SPRAGUE:  I am really Mr. Sprague.

24             THE COURT:  Because I'm not sure when I read all this

25   correspondence, --

1    MR. SPRAGUE:  I am really Mr. Sprague, I am really

2  from San Antonio and I consider it a privilege to be allowed to

3  appear before you.  I also consider it a privilege to represent

4  Learjet.  I've done that since the early '90s.  And I do

5  represent Learjet in this case.  I represent Bombardier, Inc.

6  in this case.  Mr. Racine is our expert witness.

7    The parties to the case before you now are Learjet

8  and Bombardier, Inc.  So I'll gladly accept notices of hearings

9  and things like that in your court in this proceeding because

10  they're the only parties to this proceeding and I do represent

11  them.

12    As was clearly set forth in the letter to Mr. Justis,

13  I told him if you want to go forward with these collateral

14  actions that he's now filed in three separate states --

15    THE COURT:  What collateral actions?

16    MR. SPRAGUE:  This one, one in Tulsa and one in

17  Boston.

18    THE COURT:  Well, I mean you say that in a way as

19  though they've done something wrong.

20    MR. SPRAGUE:  No, sir, I don't think they -- I think

21  they followed the rules, except that they haven't formally

22  served Mr. Racine --

23    THE COURT:  Well, you know, what I could do, if Mr.

24  Racine is not -- I'll make this simple.  I'll issue an order

25  barring Mr. Racine from giving any testimony in this case and

1    I'll send that off to the judge in Kansas and that will take

2    care of the whole matter.

3            MR. SPRAGUE:  Well, your Honor, I respectfully

4    disagree that that, A., would take care of the matter, or B.,

5    that that would be appropriate.  The documents responsive to

6    the subpoena have been provided.  In fact, many of the

7    documents responsive to the subpoena were provided before the

8    subpoena was even served.  That is all the documents that he

9    reviewed, all the documents that were sent to him, all the

10   documents that he relied upon to render his opinions, a

11   complete copy of his report, all the Rule 26 disclosures were

12   all completed and sent to him before this subpoena issue ever

13   came up.

14           THE COURT:  Did you send the information with respect

15   to what he has been paid as an expert in this case?  Did you

16   send that?

17           MR. SPRAGUE:  He hasn't been paid anything in this

18   case.  We sent him -- We sent the information required --

19           THE COURT:  Did you send -- Well --

20           MR. SPRAGUE:  -- under Rule 26.

21           THE COURT:  Did you send the contract under which

22   he's to be paid to the plaintiffs?

23           MR. SPRAGUE:  The only thing responsive to the

24   subpoena in that regard that was not provided prior to the

25   filing of this motion was what my letter to Mr. Racine asking

1    for the Rule 26 report, which had the front line confirmed --

2            THE COURT:  You mean he's working for free?

3            MR. SPRAGUE:  No, sir.  That confirmed his

4    engagement.  We had agreed, but there had been nothing in

5    writing up to that point.  And so that letter confirmed --

6            THE COURT:  Do you have a contract with Mr. Racine

7    with respect to his services as an expert?

8            MR. SPRAGUE:  The only -- No, sir.  The only document

9    we have in that regard is my letter confirming his engagement

10   at a rate of $150 an hour and $200 an hour for testimony.

11           THE COURT:  Okay, and --

12           MR. SPRAGUE:  And that has been provided to them.

13           THE COURT:  Okay.  And he has not billed you?

14           MR. SPRAGUE:  He has not billed us.

15           THE COURT:  Okay.

16           MR. SPRAGUE:  In fact, I found out as a result of

17   this that he hasn't even been keeping time records.  Mr. Racine

18   is a pilot, your Honor.  He's not an expert witness-type

19   witness.  He's an operator --

20           THE COURT:  Wait, wait, stop right there.  Did you

21   designate him under Rule 26 as an expert?

22           MR. SPRAGUE:  Yes, sir, I did.

23           THE COURT:  All right then, don't tell me he's not an

24   expert.

25           MR. SPRAGUE:  Well, what I'm telling you is he's not

1    routinely in the business of doing this, so he doesn't have the

2    time records.  He doesn't have all that stuff.

3           THE COURT:  I don't care what he has or doesn't have.

4    Just send what you have.

5           MR. SPRAGUE:  And it's been sent.

6           THE COURT:  Okay.  Then you --

7           MR. SPRAGUE:  They've got all those documents, your

8    Honor.

9           THE COURT:  Okay.

10          MR. SPRAGUE:  The point is --

11          THE COURT:  Then the remaining documents are . . .

12          MR. SPRAGUE:  Everything from Mr. --

13          THE COURT:  Did you send all the correspondence he's

14   looked at?

15          MR. SPRAGUE:  Everything that Mr. Racine --

16          THE COURT:  Your letters between him and you?

17          MR. SPRAGUE:  Yes, sir.  Everything Mr. Racine has

18   that is responsive to that subpoena has been provided despite

19   the objections that were filed by Mr. Racine.

20          THE COURT:  Well, what the heck did he file the

21   objections for, if he provided all that?

22          MR. SPRAGUE:  He filed the objections basically to

23   buy us time to respond to this because I was on my way to

24   Belfast, Northern Ireland for two weeks.  Counsel knew that.

25   We had set up a time to take these people's depositions before

1    I left for Belfast as a courtesy to counsel because of the

2    pending discovery deadlines.

3              THE COURT:  All right, let me tell you something.

4              MR. SPRAGUE:  And this whole dispute arises --

5              THE COURT:  Let me tell you something.  I read all

6    the correspondence.

7              MR. SPRAGUE:  Okay.

8              THE COURT:  It appears to me from the getgo you're

9    not giving them anything and you're conditioning production

10   upon them, upon the plaintiff relinquishing a similar request

11   on some of your other experts.  That's what I've read.  And

12   this is the first time I've heard that you presented everything

13   to them.  If you did, I don't know what you fellows are doing

14   here spending your clients' money.

15             MR. SPRAGUE:  Well, your Honor, I agree with that.

16             THE COURT:  I mean you've got maybe -- Learjet must

17   have all the money in the world, don't care what they spend

18   because this is the silliest thing I've ever seen.

19             MR. SPRAGUE:  And again, your Honor, I agree with

20   that.

21             THE COURT:  Well --

22             MR. SPRAGUE:  I don't think we should be here.

23             THE COURT:  Have you made a complete production?

24   Have you made complete production as to the document requests

25   that was in the subpoena?

1      MR. SPRAGUE:  Absolutely, yes, sir.

2      THE COURT:  What do you think of that?

3      MR. JUSTIS:  Let me speak to that, please.

4      THE COURT:  Okay.

5      MR. JUSTIS:  Because this gets much sillier.  Here's

6  the fax that he produced to us, the documents.  What they

7  produced to us were four documents.

8      THE COURT:  Okay.

9      MR. JUSTIS:  The objections, the subpoena itself --

10      THE COURT:  Yes?

11      MR. JUSTIS:  -- another copy of his report, and a

12  two-and-a-half page letter from him to Mr. Racine confirming

13  what he just stated.  So they produced one new document, that

14  three-page letter.

15      Now let's look at that in comparison to what they

16  have said, both in their objections and all that.  They with-

17  held that one three-page letter from us and would not let --

18      THE COURT:  The letter?  You mean the letter from Mr.

19  Sprague to Mr. Racine?

20      MR. JUSTIS:  Right.  They claim that's the only

21  document responsive to our document subpoena.  They withheld

22  that, would not produce it, being the only document as they

23  claim, if that is the only document, and allow us to take his

24  deposition based on the production of that one document because

25  they wanted us to withdraw the document request to the expert

1    in Boston.

2          Now let's look at that one letter in comparison with

3    their objections.  They objected, stating that production of

4    documents would violate his privacy, his tax information.  How

5    does that letter violate his tax information?  They objected

6    and said our document requests were vague, ambiguous, overly-

7    broad and unduly burdensome?  How does any of that relate to

8    one three-page letter?

9          They also said that it would take him a substantial

10   amount of time and resources to pull together the documents to

11   respond to that subpoena.  A three-page letter?  That's how

12   silly this is, your Honor.  We agree that it's silly.  That's

13   why we think this is about as appropriate a case for costs as

14   you can get.  And we have incurred significant costs to get a

15   three-page letter which they could have produced and we did

16   agree, if they would produce all these documents, we would have

17   taken his deposition in San Antonio as they wanted.  But they

18   refused to do that because they wanted to hold this three-page

19   letter hostage unless we withdrew the document requests to the

20   expert in Boston.  It's ludicrous.

21         THE COURT:  Well, that's what I've read.  Mr.

22   Sprague, is that an accurate representation of what's happened

23   here?

24         MR. SPRAGUE:  No, sir, I don't believe that

25   accurately represents what's happened.  Counsel forgets that we

1    sent him volumes of the materials before the subpoena issue

2    ever even came up under Rule 26 disclosures.

3            THE COURT:  With respect to --

4            MR. SPRAGUE:  With respect to Mr. Racine.

5            THE COURT:  These were the documents Mr. Racine --

6            MR. SPRAGUE:  Everything Mr. Racine ever reviewed in

7    connection with this case that he relied upon to render his

8    opinions in this case.

9            THE COURT:  So what about these -- You mean you're

10    all here on these three pages?

11            MR. SPRAGUE:  We're all here because we couldn't

12    negotiate a reasonable solution to this issue before I left for

13    Belfast, Northern Ireland.  That's why we're here.

14            THE COURT:  What was the reasonable solution?

15            MR. SPRAGUE:  Well, we were working on that.  I was

16    trying to get him to say what exactly -- You've read my

17    letters.  There's numerous times in my letters where I've said

18    tell me what documents you want specifically and we can

19    negotiate what documents we can produce before the deposition.

20            Now you have to remember, your Honor, discovery --

21            THE COURT:  What do you mean negotiate?

22            MR. SPRAGUE:  -- had already passed in this case.

23            THE COURT:  What do you mean negotiate?  You produced

24    everything that the expert read and relied on, including

25    directions to him from you?

1      MR. SPRAGUE:  Absolutely.

2      THE COURT:  You provide the contract under which he

3  is going to be employed as an expert.  You give them documenta-

4  tion as to what he was paid.  What are you negotiating?

5      MR. SPRAGUE:  Well, your Honor, we gave them every

6  bit of that before the motion was served, because there is no

7  written contract.

8      THE COURT:  You gave them this letter?

9      MR. SPRAGUE:  There is no contract.  To the extent

10  that that --

11      THE COURT:  Fine, there's no contract.

12      MR. SPRAGUE:  So that was not covered by the

13  subpoena.  My letter --

14      THE COURT:  Did you tell them there was no contract?

15      MR. SPRAGUE:  My letter to him is not a letter upon

16  which he relied in forming his opinion so it's not technically

17  responsive to the subpoena.

18      THE COURT:  What letter?

19      MR. SPRAGUE:  The letter that we've been discussing,

20  this three-page letter he's talking about, is basically a

21  request for him to write a Rule 26 report for us.

22      THE COURT:  Well, that's close enough.

23      MR. SPRAGUE:  In the 26.(a) disclosures that we told

24  him the rates upon which he was retained so they had all that

25  information.  We provided all the documents that he reviewed,

 1   extra copies of all the documents that he reviewed, even though

 2   they had the vast majority of those documents already in

 3   discovery.  So they've gotten all those documents.

 4          THE COURT:  Well, all you had to do was tell them he

 5   relied on this particular document and that particular, but --

 6          MR. SPRAGUE:  And we did.

 7          THE COURT:  -- maybe it was more efficacious to

 8   duplicate the documents.  Fine.

 9          MR. SPRAGUE:  We provided them with all those things

10   before this motion was ever filed, your Honor.

11          THE COURT:  You didn't make complete disclosure.

12          MR. SPRAGUE:  I disagree.  I think we provided

13   complete disclosure.

14          THE COURT:  When you provided him with this large

15   body of documents, --

16          MR. SPRAGUE:  Right.

17          THE COURT:  -- were the documents you just referred

18   to, your letter, the contract, included within that

19   transmission?

20          MR. SPRAGUE:  All except for that letter, yes.

21   Everything except that letter.  Let me show you what that

22   letter is, your Honor.

23                                              (Pause.)

24          (Inaudible) I have it.

25                                              (Pause.)

1         May I approach, your Honor?

2         THE COURT:  Sure.  So when did you -- This is --

3         MR. SPRAGUE:  My office --

4         THE COURT:  Well, this is exactly what has to be

5    provided.  And when did you provide this to the plaintiffs?

6         MR. SPRAGUE:  Whatever the date on that fax is.  It

7    was sent while I was in Belfast.

8         THE COURT:  I don't know where the hell that is.

9         MR. SPRAGUE:  I think it's right (inaudible).

10        THE COURT:  Okay.  Oh, here we are.

11        MR. SPRAGUE:  (Inaudible).

12        THE COURT:  Okay, all right.  No, --

13        MR. SPRAGUE:  It should be that date.  Is there a

14   date on it?

15        MR. JUSTIS:  We received that by fax on March 8th,

16   your Honor.

17        THE COURT:  March 8th?

18        MR. SPRAGUE:  (Inaudible).

19        MR. JUSTIS:  After we filed our motion.

20        THE COURT:  Well, wouldn't that end the situation for

21   you then?

22        MR. JUSTIS:  Your Honor, if that's all the documents

23   he has -- Let me speak to something first.  We never issued a

24   subpoena asking for documents he relied on.  We already had

25   those documents.  We issued a subpoena asking for three

1   specific types of documents, the same types they asked from our

2   experts, which we produced:  All things and things created by

3   you that relate to this litigation.

4           THE COURT:  Okay.  Now let me stop you there.  That

5   he created.

6           MR. JUSTIS:  Right.

7           THE COURT:  Has he created any documents, Mr.

8   Sprague?

9           MR. SPRAGUE:  No, sir.

10          THE COURT:  So why didn't you just tell them that?

11          MR. SPRAGUE:  I did.

12          THE COURT:  When?

13          MR. SPRAGUE:  We told him in one of the letters that

14  you've read.

15          THE COURT:  Did he tell you that?

16          MR. SPRAGUE:  They wrote all kinds of stuff.  I

17  couldn't tell what they had and what they didn't have.  It was

18  apparent from the letters that they had all kinds of documents,

19  and from their objections he was going to have to spend undue

20  time and expense gathering these documents.

21          THE COURT:  Well, that's what I read.  You had this

22  mass of documents you had to go through.  I mean you wrote

23  that.  All you had to do was say, hey, Mr. Racine hasn't really

24  created anything.  That's all you had to say.

25          MR. SPRAGUE:  When --

1          THE COURT:  One letter.

2          MR. SPRAGUE:  When --

3          THE COURT:  One letter, maybe two paragraphs.

4          MR. SPRAGUE:  When Mr. Racine filed his objections,

5     your Honor, you have to remember that I was overseas.  We

6     didn't have an opportunity for me to come to Chicago and go

7     through Mr. Racine's file or to discuss in depth with him what

8     he had -- (inaudible, multiple voices).

9          THE COURT:  Well, you had -- Wait a second.  When is

10    all this correspondence that I've read?

11         MR. SPRAGUE:  That's what -- (inaudible, multiple

12    voices).

13         THE COURT:  I was here last night reading all this

14    stuff.  I said I can't believe this.

15         MR. SPRAGUE:  That's from early on, your Honor.

16         MR. JUSTIS:  It's --

17         THE COURT:  I mean it all relates to the expert's

18    documents.

19         MR. SPRAGUE:  Yes, sir, it does.  Now --

20         THE COURT:  You know, you guys from Texas are

21    supposed to be straight shooters.

22         MR. SPRAGUE:  I think I am, Judge.

23         THE COURT:  Well, I read all this mass of corre-

24    spondence and I don't get it.  I honest to God don't get it.

25         MR. SPRAGUE:  Well --

1    THE COURT:  You have a -- Let me ask you this, Mr.

2    Justis.   He provided you with the documents that he relied on.

3    MR. JUSTIS:  Before we even issued the subpoena, yes.

4    THE COURT:  But you issued the subpoena.

5    MR. JUSTIS:  That's correct.

6    THE COURT:  Then did you make an informal request of

7    these three items?

8    MR. JUSTIS:  That's correct.

9    THE COURT:  And the response was?

10    MR. JUSTIS:  You have to serve us --

11    THE COURT:  You didn't get them?

12    MR. JUSTIS:  -- with formal discovery.  You have to

13    serve us with formal discovery.

14    THE COURT:  Serve with formal discovery.

15    MR. JUSTIS:  Which we did.

16    THE COURT:  And you did, and that was by way of a

17    subpoena.

18    MR. JUSTIS:  That's correct.

19    THE COURT:  Okay.  And don't tell me, Mr. Sprague,

20    you're not representing Mr. Racine because you are.

21    All your correspondence implies that, and you said

22    that in your correspondence, and he's your expert.

23    MR. SPRAGUE:  I -- He is my expert.

24    THE COURT:  So you're responsible for getting this to

25    them.

1          MR. SPRAGUE:  Your Honor, if the discovery --

2          THE COURT:  So did you ever write them, I mean right

3  off the getgo, saying he hasn't really drafted or created any

4  documents?

5          MR. SPRAGUE:  Yes.  In fact there's letters in that

6  stack that you read that said he doesn't have any drafts, he

7  doesn't have all -- What he has and what he doesn't have.

8          THE COURT:  Show me that letter.

9          MR. SPRAGUE:  Yes, sir.

10                                                    (Pause.)

11          It's the February 11 letter.  I believe it's Exhibit

12  G to their motion, your Honor.

13          THE COURT:  Okay, Exhibit G.

14          MR. SPRAGUE:  I've already provided you with a

15  copy --

16          THE COURT:  Okay, this is from you.

17          MR. SPRAGUE:  Yes, sir.

18          THE COURT:  This will confirm the availability of our

19  expert for deposition as agreed.

20          MR. SPRAGUE:  No, February 11, your Honor.

21          THE COURT:  February 11.

22          MR. SPRAGUE:  Maybe I had the wrong -- (inaudible,

23  multiple voices).

24          THE COURT:  Oh, I looked at the wrong -- I'm sorry.

25  I looked at the wrong one.  I'm in receipt of the Rule 45

```
 1    subpoena delivered to Racine.

 2              MR. SPRAGUE:  Right.

 3              THE COURT:  I have not heard from Mr. Snow.  I guess

 4    that's another expert.

 5              MR. SPRAGUE:  Yes, that's the man in Tulsa, your

 6    Honor.

 7              THE COURT:  All right.  As you know, my last letter

 8    offered to negotiate the production of certain documents that I

 9    assumed you wanted prior to deposition of our expert.  What do

10    mean, negotiate?  Why didn't you say I'm trying to get all

11    these documents to you?

12              MR. SPRAGUE:  Well, your Honor --

13              THE COURT:  Why do you have to say that?

14              MR. SPRAGUE:  If you'll look at the letter where he

15    requests them, he had a whole page of conditions upon which he

16    expected us to meet, and this is again all in, you know, he

17    wants us to do it immediately.  He wants us to do it on his

18    time schedule and it's all extra -- It's all way beyond what

19    the rules would require, your Honor.  And that's typical in

20    this case.

21              THE COURT:  You know what?  Wait a second.

22              MR. SPRAGUE:  It --

23              THE COURT:  Wait a second.  As it turns out, there's

24    four pages of documents or three pages of document.  All you

25    had to do was say in a letter there's -- Let's see, let me --
```

1    When is the first correspondence?

2            MR. SPRAGUE:  Your Honor?

3            THE COURT:  Here's one --

4            MR. SPRAGUE:  It says --

5            THE COURT:  Hold it, hold it, hold it.  Hold on

6    there.  Let's see.

7                                                  (Pause.)

8            You have a letter from -- Let's see where we are.

9            Well, I see you're jacking them around on -- What's

10   the date of this one?

11                                                 (Pause.)

12           Well, that's February 6th.  You're talking about the

13   draft reports and there's a lot of verbiage here.  All you had

14   to do was say here, I got four documents, four letters and I'm

15   sending them to you and that should satisfy the situation

16   because Mr. Racine hasn't made any written reports.  But we're

17   in February 11.

18                                                 (Pause.)

19           You're talking about Edgar.

20           MR. SPRAGUE:  Eagar.

21           THE COURT:  Eagar.  Eagar.

22                                                 (Pause.)

23           If you withdraw your subpoenas to our experts, we are

24   willing to ask Mr. Eagar for a list of other cases he worked on

25   for Learjet.  Well, that's handy to you.  I think you're

1   required to indicate where he testified or had been deposed as

2   an expert.

3          MR. SPRAGUE:  Which we've done, your Honor.  That's

4   what generated the subpoena for four years of financial

5   records.

6          THE COURT:  All right.  We're going to grant the

7   motion to compel the discovery and if you have provided the

8   discovery, you are directed, Mr. Sprague, to make a certifica-

9   tion, under oath, to the plaintiffs that documents that you

10  have provided to them satisfy the three requests and you'll

11  show in your certification which documents relate to which of

12  the three requests.  One request you say there are no

13  documents, and we'll take your certification there are no such

14  documents.

15         MR. SPRAGUE:  (Inaudible).

16         THE COURT:  With respect to the correspondence,

17  you've indicated there's only one bit of correspondence to the

18  expert.  Well, any documents or tangible things between the

19  defendant and its expert, including the attorney correspond-

20  ence.  And you're here to say that that is it, that one letter

21  you just showed me, the letter of January 9th to Mr. Racine

22  from yourself.

23         MR. SPRAGUE:  That's the only one that had not

24  previously been provided, yes.

25         THE COURT:  All right, and there are no others?

1          MR. SPRAGUE:  There are no others.

2          THE COURT:  Well, you'll certify that.

3          MR. SPRAGUE:  There are none that have not been

4   provided.

5          THE COURT:  All right, you'll certify that.  And all

6   retainer agreements, billing statements, and you have that?

7          MR. SPRAGUE:  Yes.

8          THE COURT:  You provided that?  Have you?

9          MR. SPRAGUE:  As I said earlier, your Honor, they

10  have everything that Mr. Racine has that's responsive to that

11  subpoena.

12         THE COURT:  I'm asking you with respect to Item 3:

13  All retainer agreements, billing statements, time records,

14  other documents generated by Mr. Racine with respect to his

15  services in this litigation.  Have you done that?

16         MR. SPRAGUE:  Yes, sir.

17         THE COURT:  Okay, and you're asserting there are no

18  others?

19         MR. SPRAGUE:  There are no others.

20         THE COURT:  And you'll be --

21         MR. SPRAGUE:  I confirmed that with Mr. Racine this

22  morning.

23         THE COURT:  Okay.  And you're going to be required to

24  supplement this production request as documents come into

25  existence.

1    MR. SPRAGUE:  That's fair, your Honor.

2    THE COURT:  And that's going to be the order.  And

3 Mr. Justice, you're going to draft this order for me indicating

4 that you're going to get a certification under oath from Mr.

5 Sprague as to completion of the requests indicating whether

6 there are or are not documents, and those documents he had

7 provided exhaust the subpoena, and that he will be required to

8 supplement.

9    MR. JUSTIS:  Your Honor, point of clarification?

10    THE COURT:  Yes?

11    MR. JUSTIS:  Mr. Racine, when he did respond,

12 indicated these were all the documents in his possession.

13    THE COURT:  That exist.

14    MR. JUSTIS:  That exist.

15    THE COURT:  Yes.

16    MR. JUSTIS:  Certainly he is to respond to documents

17 within his possession or control.

18    THE COURT:  Yes.

19    MR. JUSTIS:  And we would argue that those include

20 documents that his attorneys possess.  So I want to make sure

21 when we're talking about any correspondence, we're also talking

22 about correspondence that may have come from his attorneys that

23 he may not longer possess but they have copies of.

24    MR. SPRAGUE:  There's no such correspondence, your

25 Honor.

1    THE COURT:  Well, put that in the order.

2    MR. JUSTIS:  Another point, please.  We are going to

3 go ahead and issue a subpoena for his deposition in this

4 jurisdiction, so we'd like to keep this collateral matter open

5 for the purposes of conducting that deposition, much like we

6 did with one of the other witnesses in this case.

7    THE COURT:  Do you have a date for this deposition to

8 take place?

9    MR. JUSTIS:  We do not.  As frankly, right now, we

10 have a motion to extend the discovery deadline.  Our expert

11 discovery deadline passed.  We were not able to take those dep-

12 ositions because we could not get any of the documents.  We

13 have a pending motion and our reply to that motion is due by

14 noon on Friday.  We wanted to have this proceeding first so we

15 could report to the court the results of this proceeding.  But

16 we should be getting -- I can't imagine they're going to agree

17 to produce him for deposition until we have an extension of

18 that expert discovery deadline.  So we're going to have to wait

19 to see if that is extended and if we have that opportunity.

20    THE COURT:  Well, Mr. Racine lives here in this area?

21    MR. JUSTIS:  That is correct.

22    MR. SPRAGUE:  His deposition was originally scheduled

23 in San Antonio, Judge.  If he's deposed up here, I suppose that

24 I don't have a problem with that but --

25    THE COURT:  Well, that's for your convenience.

1    MR. SPRAGUE:  Well actually, it was for his conven-

2 ience so he could do both my experts in the same place at the

3 same time.

4    THE COURT:  Well, it's for everybody's convenience.

5 It saves time and money and everything else.

6    MR. SPRAGUE:  That was the intention, your Honor.  I

7 guess I don't have any objection to that, is what I'm saying.

8 I don't know that his deposition will actually be taken or that

9 it will be taken up here.

10    MR. JUSTIS:  The only reason I suggest that, your

11 Honor, is if it comes to light during his deposition that there

12 are other documents that have not been produced, we want to be

13 able to alert the Court to that since the Court is familiar

14 with the document dispute.

15    THE COURT:  I'm going to take under advisement the

16 issue of whether costs should be assessed against defendant.

17 Mr. Sprague, why should you not pay for the expense of these

18 proceedings when all you had to do, you had three letters.  Was

19 it three pages?

20    MR. JUSTIS:  Three pages.

21    THE COURT:  Three pages.

22    MR. JUSTIS:  One three-page letter.

23    THE COURT:  All you had to do was send it over to

24 them with an explanation that, number one, he didn't produce

25 any documents and this is everything that meets the three

1    requests.  Why didn't you do that right at the getgo?

2            MR. SPRAGUE:  Your Honor, A., I didn't know that that

3    was the limit of the documents in Mr. Racine's file at that

4    point, but B., I'm a firm believer in following the rules.  We

5    file discovery requests.  We respond to discovery requests in

6    accordance with the rules, and I tried to work with counsel

7    professionally to make things go as easily as possible.  And

8    that's what I tried to do in this case.

9            THE COURT:  How do you show me that to be true?  How

10    do you show me that to be true?  Tell me -- Show me the

11    correspondence that establishes that representation to the

12    Court.

13            MR. SPRAGUE:  Well, your Honor, just the fact that we

14    were trying to take our experts in San Antonio so we could get

15    them both done with the least amount of travel and the least

16    amount of expense and in a timely fashion before the discovery

17    cutoff.  That's something we certainly didn't have to do.  It

18    was certainly something that was saving expenses for the

19    plaintiffs.  It wasn't going to save us any money because I had

20    to fly my experts in as opposed to me flying to them.  That's

21    one example of how we were trying to make this the easy way.

22            The offers that we made to try to resolve this issue

23    without any involvement of any -- of your Court, of the court

24    in Tulsa or the court in Massachusetts, all those offers went

25    completely --

1          THE COURT:  Well, what do you mean an offer to --

2     There are three documents.  Why didn't you just say here they

3     are?  This is it.

4          MR. SPRAGUE:  Your Honor, had I known that that was

5     the only three documents that were not produced out of Mr.

6     Racine's file, I think I certainly would have done that.  But I

7     did --

8          THE COURT:  Well, when did you find out?

9          MR. SPRAGUE:  Well, Melissa found that out while I

10    was in Belfast.

11         THE COURT:  And that was when?

12         MR. SPRAGUE:  That was after they filed the motion to

13    compel.  Or -- Yes, after they filed the motion to compel.

14         THE COURT:  What do you think of that, Mr. Justis?

15         MR. JUSTIS:  One, he has other personnel in his

16    office.  They could easily have just picked up the phone and

17    said, Mr. Racine, what do you have in response to this?

18         Two, they have the largest firm in Kansas City

19    representing them, nearly 500 lawyers.  They've got plenty of

20    lawyers on the case there.  One of them could have called him.

21         They also have used the services of Lord, Bissell &

22    Brook right here in Chicago on several -- They've served seven

23    to 10 Rule 45 subpoenas in this case.  You've heard issues with

24    respect to a couple of them.

25         I will remind your Honor that the last time we were

1   here they had issued a Rule 45 subpoena to the two principals

2   of plaintiff seeking their personal tax returns for the past

3   five years after the court in the District of Kansas gave an

4   advisory ruling that those weren't relevant, and forced us to

5   come up here and file the motion to quash.

6          And upon leaving that hearing that day, I talked with

7   Ms. Wrona about this, you indicated that you had considered

8   assessing costs against them based upon the fact they made us

9   do that.  This is much more egregious than that.  Much more.

10          THE COURT:  Well, Mr. Sprague?

11          MR. SPRAGUE:  Your Honor, --

12          THE COURT:  You got a legion of lawyers working for

13   you.  You have one of the finest law firms here in Chicago.

14          MR. SPRAGUE:  Well, that --

15          THE COURT:  And you have your witness in Chicago.

16   And you have this Kansas City group that's got a large body of

17   lawyers.

18          MR. SPRAGUE:  Your Honor, --

19          THE COURT:  You're not exactly there by yourself.  I

20   take it you have another lawyer working with you.

21          MR. SPRAGUE:  I have several lawyers in my firm, your

22   Honor, that's true.  And in hindsight, you know, throwing more

23   money at it, more lawyers at it may have been the better thing

24   to do.

25          THE COURT:  What do you mean throwing more lawyers?

1    There are three pages, counsel.

2        MR. SPRAGUE:  I know, your Honor, but I had to have a

3    lawyer up here in Chicago go out and meet with the witness and

4    go through his file or have the witness send -- copy his entire

5    file and send it to a lawyer for review, and I was frankly

6    trying to avoid that.

7        Your Honor, I find it terribly ironic that counsel

8    should raise this financial records issue where he fought us

9    tooth and nail that the financial conditions of his clients are

10   irrelevant in this case, when this whole dispute arises from

11   the fact that he's asked for four years' worth of financial

12   records from an expert in Boston.  Now if the plaintiffs'

13   financial condition is not relevant to their credibility and to

14   their positions in the lawsuit, how can the financial condition

15   of an expert witness be any more relevant?

16       THE COURT:  I don't know what he asked in Boston.

17       MR. SPRAGUE:  Well, but that's what generated the --

18       THE COURT:  If he asked --

19       MR. SPRAGUE:  That's what generated this dispute.

20       THE COURT:  If the request in Boston is similar to

21   the request here, I don't know what you're talking about.

22       MR. SPRAGUE:  Well, it's not.  It's got six extra

23   things asking for financial records from all its consulting,

24   both litigation and non-litigation, by case and by amount for

25   the last four years.  So that's the kind of discovery abuse

1    we've been facing from his side.  That's what generated the

2    dispute and rightly or wrongly, we attempted to negotiate a

3    global resolution of these three expert issues at the same time

4    instead of dealing with them one at a time.  That's -- It was

5    all done in good faith and in an effort to try to minimize this

6    kind of expense and this kind of involvement.

7         No one wanted to open up three separate actions in

8    three separate states again to deal with this discovery issue.

9    And still, I'm surprised, having produced all the documents,

10   told them we produced all the documents, that they still

11   dragged us up here for this hearing.  They've got the documents

12   from Mr. Racine.  They've got the documents from Mr. Snow.

13   They have now served, properly, the witness in Boston.

14        THE COURT:  Well, let me ask you something.  You

15   indicated in your correspondence you were not available to a

16   notice for the production of documents under Rule 26 with

17   respect to the expert.

18        MR. SPRAGUE:  I think what I said was that they had

19   waited too late and that the 30-day time limit under the rules

20   had expired.

21        THE COURT:  What 30-day time limit?

22        MR. SPRAGUE:  To respond -- If you're going to

23   subpoena a witness to a deposition --

24        THE COURT:  Well, no, let's back up before the

25   subpoena.

1     MR. SPRAGUE:  Okay.

2     THE COURT:  Did you, under the rules, just make a

3 production request for the expert's materials?

4     MR. JUSTIS:  No, we did not.  We did not make a Rule

5 34 request.  What had happened was they had requested, and we

6 did not object to it and easily granted an extension of time

7 for them to disclose their expert opinions.  So they cut into

8 our discovery period.  We sent the letter originally on January

9 29th.  So we had more than 30 days --

10     THE COURT:  On January 29th you asked them for what?

11     MR. JUSTIS:  We asked them for the documents that

12 were part and parcel of the subpoena.

13     THE COURT:  Under Rule 26.

14     MR. JUSTIS:  Yes.

15     MR. SPRAGUE:  Well, that was --

16     MR. JUSTIS:  No --

17     MR. SPRAGUE:  -- in the correspondence.  And I

18 offered to treat that as a Rule 26 discovery request and he

19 rejected that offer.

20     MR. JUSTIS:  No, no, that's not the case at all.

21 What happened was he alerted to us at that point that yes,

22 there has been no formal discovery requested from us.  If you

23 want us to treat this as a Rule 34 request, we will wait 30

24 days and we will serve responses and/or objections.  And then

25 he started talking about all the objections he was going to do.

1　So we decided at that point, and certainly we have the right to

2　use any discovery tool, that since our discovery period had

3　been cut down already, the most expedient way to handle this

4　was to use a Rule 45 subpoena.  I mean they've used several of

5　them.  Why can't we use one?

6　　　　MR. SPRAGUE:  Your Honor, I'm not contesting that

7　they have a right to use the Rules of Civil Procedure as they

8　deem fit.  But I have to tell you since 1979, in all my

9　practice, this is the first time I've ever had an opposing

10　party go around me and directly subpoena my expert witnesses.

11　The time crunch was of their own making.  They didn't serve

12　interrogatories.  They didn't serve requests for production in

13　a timely fashion.  When they sent the January 29th letter, I

14　responded and said if we can treat your January 29th letter as

15　a request for production and respond in accordance with the

16　rules if you like.  He didn't want to do that.  He wanted the

17　documents now and he wanted his other list of conditions met

18　now, which included all this stuff from Mr. Eagar.

19　　　　So again, we were trying to deal with the issue on a

20　global issue rather than piecemeal, one at a time, in an effort

21　to safe time, money and expense for everyone.

22　　　　MR. JUSTIS:  That's not the case either, your Honor.

23　We offered on two separate occasions to go ahead with the dep-

24　ositions of Mr. Racine and Mr. Snow in San Antonio while we

25　worked through a genuine dispute with respect to Mr. Eagar in

1    Boston.

2            THE COURT:  Well, I don't get it.  We just do things

3    a little more expeditious around here.  Rule 26.(a)(2)(B) says:

4            "Except as otherwise stipulated or directed by the

5        Court," --

6    This is the voluntary disclosure with respect to experts, and

7    it says that:

8            "The report shall contain the complete statement of

9        all opinions expressed. . ."

10            MR. SPRAGUE:  Your Honor, we did all --

11            THE COURT:  -- ". . . the compensation to be paid,

12        the information considered by the witness, listing of any

13        other cases in which the witness has testified."

14            Why was that 26.(a)(2) disclosure not made?

15            MR. SPRAGUE:  It was, your Honor.  In full.  They're

16    not complaining about that disclosure.  This is additional

17    discovery over and above the Rule 26 disclosure.

18            THE COURT:  Well, as I read the subpoena request, it

19    asks nothing more than that in Rule 26.(a)(2).

20            MR. SPRAGUE:  I respectfully disagree, your Honor.  I

21    think it's much broader than that.

22            THE COURT:  Where?  You tell me where --

23            MR. SPRAGUE:  Rule 26.(a) does not mention retainer

24    agreements.  It does not mention correspondence.  It does not

25    mention anything other than what's in the rule.  And we

1    provided all of that information as they --

2              THE COURT:  Compensation to be paid.

3              MR. SPRAGUE:  We told them, in the Rule 26.(a) report

4    we told them he was going to get paid $150 an hour and $200 per

5    hour for testimony, which is the same information they gave us

6    from their witnesses.

7              MR. JUSTIS:  Voluntarily, without objection.

8              MR. SPRAGUE:  Well, we gave it to you voluntarily

9    without objection, too, counsel.

10             MR. JUSTIS:  After we filed this motion.

11             MR. SPRAGUE:  Now that's not true, Judge.  It's in

12   the Rule 26 report, and he knows it's in the Rule 26 report.

13             THE COURT:  You're local counsel, are you not, Mr.

14   Justis?  Where are from you from?

15             MR. JUSTIS:  I am admitted here in the Northern

16   District.

17             THE COURT:  Okay.

18             MR. JUSTIS:  Pat is my local counsel.

19             THE COURT:  Okay.

20             MS. WRONA:  I'm the mail drop, your Honor.

21             MR. JUSTIS:  I actually do most of my work here in

22   this District.

23             THE COURT:  Okay.  Well, I am going to, in this case,

24   award fees and costs to the plaintiff for their having to bring

25   this motion, and that will be only those costs associated with

1    bringing the motion itself.  And that will be part of the

2    ruling, and that will be it.

3            MR. JUSTIS:  Thank you, your Honor.

4            THE COURT:  And we'll retain jurisdiction over the

5    matter and hold it open till -- We're going to hold this matter

6    open until May 24th, and we'll have a status date on May 24th.

7    Hopefully his deposition will be completed and this matter will

8    be concluded.

9            MR. JUSTIS:  Thank you, your Honor.

10           MS. WRONA:  Thank you, Judge.

11           MR. SPRAGUE:  May 24th, your Honor?

12           THE COURT:  Yes.  And Mr. Sprague, if everything is

13   complete and his deposition done, if you want to participate by

14   telephone that will be fine with the Court.

15           MR. SPRAGUE:  All right, your Honor, thank you.

16           THE COURT:  If there's some sort of hang-ups and you

17   want to be here, but you can still participate by telephone.

18           Mr. Justis, where do you come from?

19           MR. JUSTIS:  I'm in the Kansas City area also.

20           THE COURT:  If you want to -- Well, let's see, can we

21   get two on at the same time?

22           THE CLERK:  It's hard.

23           THE COURT:  All right.

24           MR. JUSTIS:  My local counsel can do that.

25           THE COURT:  All right.  Okay.  You'll draft the

1 | order?

2 | MR. JUSTIS:  Yes, I will.

3 | MS. WRONA:  We will.

4 | THE COURT:  Containing these findings and my order

5 | and that will conclude these proceedings till May 24th.

6 | MR. JUSTIS:  Thank you.

7 | THE COURT:  If everything is done, just drop me a

8 | letter and we'll tell Judge Bucklo the whole matter is

9 | complete.

10 | MR. SPRAGUE:  All right, your Honor.

11 | THE COURT:  Okay, good luck.

12 | (Hearing adjourned.)


        I, RIKI SCHATELL, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.


_____          March 31, 2004
Riki Schatell                                  Date